[No. 2930.   Decided February 25, 1899.]

HENRY MICHELS, *as Treasurer of the Catholic Church at Uniontown, Washington, Appellant,* v. FRED RUSTEMEYER, *as Executor, Respondent.*

PROMISSORY NOTES—DELIVERY—VARIATION BY PAROL—ERECTION OF CHURCH BUILDING—SUBSCRIPTIONS—ABANDONMENT.

Delivery of a promissory note payable to the treasurer of a Catholic church is sufficiently established by proof of the general usage of that organization, whereby the parish priest is the general church treasurer, but with power to appoint a special treasurer with the approval of the bishop; that, in this instance plaintiff had been duly appointed by the priest and approved by the bishop as treasurer, and that the note in controversy had been delivered to him by the maker.

Where promissory notes given in payment of a subscription to a church erection fund are made in consideration of the selection of a site and commencement of work by a given date, in an action thereon, evidence of initiatory steps and discussions of the congregation prior to the giving of the notes is inadmissible for the purpose of varying their terms.

Abandonment of a plan for the erection of a church for which subscriptions had been given is not established by evidence showing that a minor portion of the congregation and of a building committee concluded to abandon the work, owing to the stringency of the times, when it appears that a majority favored the construction of the building upon the plans originally adopted, but with a portion of the work of a temporary nature, which was to be afterwards finished in full.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Reversed.

*Trimble & Pattison,* for appellant.

*Wyman & Neill,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—Appellant (plaintiff) commenced an action in the superior court of Whitman county against respondent, as executor of the estate of Anton Ruther, deceased, upon three written contracts for the payment of money,— two of the contracts for $66 each and one for $68. The contracts, with the variation of times of payment and amounts, are identical in form. The first is as follows:

"Uniontown, Wash., August 1st, 1892.     $66.00.
"Four months after date, without grace, in consideration of a Catholic Church being located at Uniontown, Washington, for value received, I promise to pay to the order of the Treasurer of the Catholic Church, Uniontown, Washington, the sum of Sixty-Six Dollars in gold coin, with interest thereon in like gold coin at the rate of one per cent. per month from maturity until paid. This note is given towards the cost price for purchasing the site and building thereon a Catholic Church in Uniontown, and it is understood that if said church is not located and work commenced thereon prior to June 1st, 1893, this note shall be null and void, otherwise to be in full force. If suit or action is instituted to collect this note or any part thereof, I promise and agree to pay a reasonable sum of dollars for attorney's fees as the court may direct.
No. 1.                                    ANTON RUTHER."

The complaint alleges that the Catholic church referred to in the contract was located at Uniontown, Washington, prior to June 1, 1893, upon a site purchased and paid for by the church, and that plans for the building were completed and the foundation commenced and completed, and something above $4,000 expended in pursuance of the plan for construction of the church. On the 5th· of August, 1893, the deceased paid $15, which was indorsed on the first of the contracts executed by him, and received by the plaintiff. The answer is a very elaborate one and sets up a great many facts, many of which are merely evidentiary and are immaterial. It may be said that only two defenses specifically appear in the answer,—one, that the contracts were never delivered to the church treasurer; and the other, that after the work was commenced, as alleged in the complaint, there was a total abandonment of construction by the church, and of any intention to construct in accordance with the original determination for which the promises to pay money were made.

1. On the trial there was a failure of any substantial evidence to support the allegation of the answer that the contracts were not delivered to the church treasurer. It was shown by the plaintiff that the parish priest was the general church treasurer; that he had the power, with the approval of the bishop, of appointment of a special church treasurer, and that he appointed the plaintiff as such treasurer; that the contracts or notes were delivered to the treasurer; and that the deceased made a payment to the treasurer long after the delivery of the contracts or notes. There was some evidence on the part of the defendant indicating that plaintiff was originally treasurer of the building committee. But it may be observed here that the building committee, as disclosed from all the evidence, was only the agent of the congregation and that the priest was the chairman or president of such committee, and the

direct representative of the church, and that he appointed the plaintiff treasurer of the church, which appointment was ratified by the bishop, which seems, from the testimony, to be the regular usage of the Catholic church in this state.

2. Much of the defendant's answer, which relates to the initiatory steps and discussions of the congregation preceding the determination to build the church, is incompetent and immaterial; for a large number of notes or contracts similar to those executed by the deceased were executed and delivered in the same manner, and these contracts are plain and unambiguous, and the money promised to be paid thereby was due upon the location and commencement of work on the church building in Uniontown prior to June 1, 1893. These conditions having been performed by the church, the payments of the money specified were due at the time specified. The contracts express all the negotiations and the understanding of the parties that preceded their execution, and evidence tending to contradict or vary the construction of their plain words preceding their execution cannot be considered, as the parties are presumed to have reduced to writing the whole contract; but if the church were not finally constructed, although the money had been paid according to the tenor of the respective contracts, the respective payors would have been damnified by failure of a part of the consideration of their contracts, and the facts alleged in the answer, setting up a total failure and abandonment of all intention to construct the church, would be pertinent. Where the amounts due on the contracts had not been paid, perhaps such facts as alleged would constitute a defense, *pro tanto,* to the action here; that is, the building committee of the church having proceeded to expend several thousand dollars on the faith of the respective contracts in writing, which were subscriptions to pay for the

erection of the building, in any view, the subscribers would be under obligation to pay *pro rata* all the expenditures that were made. But the evidence in the record does not show a total abandonment of the intention to construct the church. There were something over eighty subscriptions made and expressed in contracts similar to the one in suit; and it appears that on account of the severe financial stringency existing in the country, and particularly among the subscribers in the vicinity of Uniontown, who were nearly all farmers, the church authorities concluded to wait or suspend the collection of the money due on the respective contracts until the subscribers should be better able to pay the amounts due from them. Considerable evidence appears relative to the action of the building committee appointed by the congregation, there having been some controversy over the plan and cost of the building to be erected, which seems to have arisen after the contracts were executed. It appears, then, that the chairman of the building committee, the priest, submitted two propositions for building to another meeting of the congregation; and the testimony of the chairman and several other members of the committee is to the effect that the congregation, after the submission of the alternative propositions to build, one a complete building, according to the plans of the architect, and the other a building upon the same plans, but with a portion of the work temporary and to be afterwards finished, adopted the latter. Several witnesses on the part of the defendant, members of the committee, testified that their understanding of the action of the congregation was contrary to the testimony of the plaintiff's witnesses. None of these witnesses for the defendant appear to have remained during the entire meeting of the congregation, but seem to have been dissatisfied at the manner in which the matter was submitted, and retired from the church before conclusive action was taken. They

do not testify clearly what was the action of the congregation, but evidence on the part of the plaintiff is clear and decisive. It also appears that several members of the building committee resigned; still leaving, however, a majority of that committee to act. These members who resigned were evidently dissatisfied and desired to abandon the further construction of the church, and they were also subscribers who had signed contracts to pay a part of the price of construction. But it is manifest that no individual subscriber, nor any number of them, could conclude to abandon the construction of the church. It would take the same authority to determine abandonment that it did primarily to order the construction. As observed, this does not appear in the evidence with any clearness.

The case is therefore reversed and remanded for a new trial.

ANDERS and DUNBAR, JJ., concur.